**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DIMARCO, | : | Civil No. 3:20-CV-01335 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF ST. CLAIR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

<u>**MEMORANDUM**</u>

This is a First Amendment retaliation case that is currently before the court on Defendants' motion to dismiss for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND AND PROCEDURAL HISTORY

This case began on July 31, 2020, when Plaintiff Frank J. DiMarco ("DiMarco") filed a complaint against Defendants the Borough of St. Clair ("St. Clair" or "the borough"), Richard Tomko ("Tomko"), and William Dempsey ("Dempsey"). (Doc. 1.) According to the allegations in the complaint, DiMarco was hired as a part-time police officer for the borough in October 1997, and subsequently hired as a full-time police officer in December 2001. (*Id.* ¶ 8.) At all material times, he was a member of the Fraternal Order of Police ("FOP"), which acted as the union for borough police officers. (*See id.* ¶¶ 9, 13.) The borough's

1

police department during the period relevant to this case consisted of a chief of police, one sergeant, three full-time officers, and six part-time officers. (*Id.* ¶ 10.)

Sometime in 2017, the position of sergeant within the borough's police department became vacant. (*Id.* ¶ 11.) Defendants Tomko and Dempsey appointed one of the full-time officers, Officer Leskin ("Leskin"), to serve as the acting sergeant. (*Id.*) This appointment allegedly ran contrary to borough policy, which required the department to notify the civil service commission and conduct a written and oral examination of officers who met certain civil service requirements before a sergeant could be chosen from among those eligible officers. (*Id.*)

At the time that Leskin was appointed to serve as acting sergeant, both DiMarco and Leskin were eligible for the position under the borough's civil service rules. (*Id.* ¶ 12.) A third officer, Officer Seitzinger, was also eligible, but expressed no interest in taking an examination. (*Id.*)

Because the borough had not conducted an examination for the sergeant position as of August 1, 2018, DiMarco sent an email to Defendants Tomko and Dempsey on that date, as well as borough council members and the borough secretary, requesting that the examination be conducted in accordance with the civil service requirements. (*Id.* ¶ 13.) After DiMarco sent the email, Leskin told

him that Defendant Tomko[1] was "pissed" about the email and that Leskin wanted to keep the sergeant position without having to go through the examination process.  (*Id.* ¶ 15.)

The complaint alleges that Defendants "engaged in a series of unlawful actions to bring [DiMarco] up on unwarranted administrative charges to suspend Plaintiff and make him ineligible for the exam."  (*Id.* ¶ 16.)  The first such action arose from a fundraiser at the Coal Street Pub in Schuylkill Township on September 12, 2018, that was organized to raise money for new tasers for that township's police department.  (*Id.* ¶ 17.)  Despite DiMarco being on duty as a borough police officer on the night of the fundraiser and not being at the fundraiser, Defendants Tomko and Dempsey suspended him for five days for purportedly engaging in "conduct unbecoming of an officer" during the fundraiser. (*Id.* ¶ 18.)

The second allegedly unlawful action occurred on or about May 20, 2019, when DiMarco posted on his personal Facebook account about his support for

---

[1] The complaint alleges that "the Mayor" was "pissed."  (*Id.* ¶ 15.)  Although the complaint refers to "defendant Mayor" and "defendant chief," *see, e.g.*, *id.* ¶ 11, the complaint never specifies which among Defendants Tomko and Dempsey is the mayor and which is the chief of police.  Nevertheless, Paragraph 18 refers to "the Mayor and/or Defendant Dempsey," *id.* ¶ 18, so the court will make the reasonable inference that "the Mayor" refers to Defendant Tomko and that "chief" refers to Defendant Dempsey.

various political candidates and was suspended for one day as a result of the post. (*Id.* ¶ 20.)

The third and final allegedly unlawful action occurred on August 3, 2019, when DiMarco was pursuing a vehicle that had multiple code violations and had almost struck another vehicle. (*Id.* ¶ 19.) The other vehicle went off road and DiMarco continued his pursuit. (*Id.*) In doing so, DiMarco caused damage to his police vehicle that caused the vehicle to be totaled. (*Id.*) DiMarco was suspended for five weeks because of the damage to the vehicle, despite other officers having caused damage to their vehicles in the past and not receiving any suspension. (*Id.*)

Based on Defendants' actions, the complaint raises three causes of action under 42 U.S.C. § 1983. (*Id.* at 4–8.) Count I raises a claim for retaliation in violation of the First Amendment against Defendants Tomko and Dempsey in their individual capacities. (*Id.* at 4–6.) Count II raises a claim for retaliation in violation of the First Amendment against all Defendants. (*Id.* at 6–7.) Count III raises an additional claim for retaliation against Tomko and Dempsey. (*Id.* at 7–8.) Defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted on October 5, 2020. (Doc. 9.) Briefing on the motion to dismiss has concluded, and it is ripe for the court's disposition. (Docs. 10, 14, 17.)

Defendants raise seven arguments for dismissal. First, Defendants argue that the complaint fails to state a retaliation claim upon which relief may be

4

granted because it fails to plead a causal connection or personal involvement by Defendants Tomko and Dempsey.  (Doc. 10 at 10–14.)  Second, Defendants argue that Count II should be dismissed with regard to Tomko and Dempsey because it is duplicative of Count I to the extent that it is raised against them in their individual capacities and because it is duplicative of claims against the borough to the extent that it is raised against them in their official capacities.  (*Id.* at 15.)  Third, Defendants argue that Count III should be dismissed because it is duplicative of Counts I and II.  (*Id.* at 16.)  Fourth, Defendants argue that the complaint fails to state a municipal liability claim upon which relief may be granted against the borough.  (*Id.* at 16–18.)  Fifth, Defendants argue that the complaint fails to state a claim for supervisory liability against Tomko and Dempsey.  (*Id.* at 18.)  Sixth, Defendants argue that any claim for injunctive relief should be dismissed.  (*Id.* at 18–20.)  Finally, Defendants argue that DiMarco's claim for punitive damages should be dismissed to the extent that it is raised against the borough and against Tomko and Dempsey in their official capacities.  (*Id.* at 20.)

DiMarco argues that the motion to dismiss should be denied because he adequately pleads the elements of a First Amendment retaliation claim, because Count II is not duplicative, and because he adequately pleads a municipal liability claim against the borough.  (Doc. 14.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  In reviewing a motion to dismiss, the court is "required to accept as true all allegations in the complaint

6

and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt, LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

DISCUSSION

### A. DiMarco's Retaliation Claim Is Dismissed in Part

The court will first address the argument that the complaint fails to state a retaliation claim upon which relief may be granted. To state a claim for retaliation, a plaintiff must allege that "(1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)). Because the retaliation claims are based on three discrete events, the court will analyze each separately.

### 1. The Complaint States a Retaliation Claim Based on the Fundraiser

The court will first address whether the complaint states a retaliation claim upon which relief may be granted with respect to the September 12, 2018 fundraiser. Defendants' argument for dismissal of the fundraiser claim arises from

the allegation that DiMarco was not in attendance at the fundraiser.  Based on that allegation, Defendants argue that any retaliation claim arising from the fundraiser must fail because DiMarco could not have engaged in any protected activity at the fundraiser if he was not there.  (Doc. 10 at 12–13.)  DiMarco argues that he can still state a retaliation claim because, under *Heffernan v. City of Paterson, N.J.*, 578 U.S. __, 136 S. Ct. 1412, 1418 (2016), an employer may still be liable for retaliation where the employer "takes an adverse action against an individual in the mistaken belief that the individual has engaged in activity that the First Amendment protects."  (Doc. 14 at 5.)

DiMarco is correct.  Under *Heffernan*, a defendant may be liable for retaliation under the First Amendment when the defendant takes a retaliatory action against a plaintiff based on the defendant's mistaken belief that the plaintiff has engaged in protected activity.  *Heffernan*, 136 S. Ct. at 1418.  Here, the complaint alleges that DiMarco was suspended for his actions at the fundraiser, despite the fact that he was not actually at the fundraiser.  (Doc. 1 ¶¶ 17–18.)  This is sufficient to infer that Defendants suspended DiMarco based on a mistaken belief that he engaged in protected activity during the fundraiser, and the complaint therefore states a retaliation claim under *Heffernan*.

### 2. The Complaint States a Retaliation Claim with Regard to the Facebook Post, But Only Against Defendant Dempsey

The court will next address whether the complaint states a retaliation claim upon which relief may be granted based on DiMarco's May 20, 2019 Facebook post. According to the complaint, DiMarco posted "about his support for various political candidates" on his personal Facebook page while off duty on May 20, 2019, and was given a one-day suspension for the post. (Doc. 1 ¶ 20.)

Defendants essentially concede that the complaint adequately pleads the elements of a retaliation claim with regard to the Facebook post, but argue that the claim should be dismissed with regard to Defendants Tomko and Dempsey because the complaint does not plead that they were personally involved in the suspension. (Doc. 10 at 14.)

For a defendant to be held liable for violation of a plaintiff's civil rights, the defendant must have personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A complaint therefore must plead a defendant's personal involvement in order to survive a motion to dismiss, which can be accomplished by alleging "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).

9

Here, the complaint does not specifically allege that Defendants Tomko and Dempsey were personally involved in suspending DiMarco for the Facebook post, but it is nonetheless reasonable to infer that Defendant Dempsey was personally involved in the suspension.  *See, e.g.*, *Connelly*, 809 F.3d at 786 n.2 (stating that a district court is required to accept as true any inferences that reasonably follow from the allegations in a complaint).  The complaint alleges that there was one chief of police at the top of the police department's organizational structure and that DiMarco was suspended based on his Facebook post.  (*See* Doc. 1 ¶¶ 10, 20.)  It is reasonable to infer from these allegations that Dempsey, as the chief of police, was personally involved in the decision to suspend DiMarco.

It is not, however, reasonable to make the same inference with regard to Defendant Tomko.  There are no allegations in the complaint from which it could be reasonably inferred that the mayor of the borough was personally involved in day-to-day personnel decisions within the police department, and there is therefore no reasonable basis to assume that Tomko was personally involved in the decision to suspend DiMarco.  The court accordingly finds that the complaint adequately pleads Defendant Dempsey's personal involvement, but does not adequately plead Defendant Tomko's personal involvement.

The court further concludes that the complaint adequately pleads the substantive elements of a retaliation claim.  As noted above, the complaint alleges

10

that DiMarco posted about his support for various political candidates on his Facebook page while off duty and was subsequently suspended for that post. This is sufficient to allege (1) protected activity, (2) a retaliatory action, and (3) a causal connection between the protected activity and the retaliatory action. Accordingly, the court will dismiss the retaliation claim arising from the Facebook incident against Defendant Tomko based on lack of personal involvement, but will allow the claim to proceed with respect to Defendant Dempsey.

### 3. The Complaint Fails to State a Retaliation Claim Arising from the Incident in Which DiMarco Totaled His Vehicle

The third and final incident on which DiMarco bases his retaliation claim is the August 3, 2019 incident in which DiMarco totaled his vehicle. According to the complaint, DiMarco was involved in a pursuit with another vehicle which resulted in him totaling his vehicle. (Doc. 1 ¶ 19.) He was subsequently suspended for five weeks, despite other police officers not having received suspensions for other incidents in which they had damaged their vehicles. (*Id.*)

Defendants raise two arguments as to why any retaliation claim arising from this incident should be dismissed: that the complaint fails to plead a causal connection between DiMarco's protected activity and the suspension, and that the complaint fails to plead that Defendants Tomko and Dempsey were personally involved in the suspension. (Doc. 10 at 14.)

11

A complaint may adequately allege a causal connection between a plaintiff's protected activity and a defendant's allegedly retaliatory conduct by alleging (1) that the defendant gave an "inconsistent explanation for taking an adverse employment action" against the plaintiff, (2) "a pattern of antagonism" against the plaintiff, or (3) an unusually suggestive temporal proximity between the protected activity and the defendant's conduct. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). The alleged circumstances as a whole may also be sufficient to infer retaliation. *Id.*

Here, the court finds that the complaint does not adequately plead a causal connection between DiMarco's protected activity and his suspension for totaling his vehicle. The complaint does not allege a pattern of antagonism that would support an inference of retaliation, nor is there any unusually suggestive temporal proximity between DiMarco's protected activity and the suspension, as DiMarco's email was sent on August 1, 2018, and the suspension occurred approximately a year later, on August 3, 2019. (*See* Doc. 1 ¶¶ 13, 19.) Although the complaint alleges that other officers were not suspended for damaging their vehicles, this allegation is not by itself sufficient to support an inference of retaliation since it is not clear from the complaint that other officers totaled their vehicles or that they took actions to cause the damage to their vehicles that were similar to DiMarco's

actions.  Accordingly, the court will grant the motion to dismiss with respect to any retaliation claim arising from DiMarco's suspension for totaling his vehicle.

Moreover, for the same reasons that the complaint fails to allege Defendant Tomko's personal involvement in DiMarco's suspension for the Facebook post, the complaint also fails to allege Tomko's personal involvement in the suspension for the damage to DiMarco's vehicle.

### B. The Complaint Fails to State a Municipal Liability Claim Upon Which Relief May Be Granted

Having concluded the analysis as to whether the complaint states a retaliation claim upon which relief may be granted, the court turns its attention to whether the complaint states a municipal liability claim upon which relief may be granted against the borough.

Local governments may not be held vicariously liable for their employees' actions under 42 U.S.C. § 1983.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978)).  Instead, a local government may only be held liable if the action that injured the plaintiff was "pursuant to official municipal policy."  *Id.* (quoting *Monell*, 436 U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* (quoting

*Monell*, 436 U.S. at 691).  To state a claim for relief against a local government, a plaintiff "must identify a custom or policy, and specify what exactly the custom or policy was."  *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)).

Defendants in this case argue that the claims against the borough should be dismissed because the complaint fails to allege the existence of any custom or policy.  (Doc. 10 at 16–18.)  DiMarco argues that he has adequately stated a claim for municipal liability because, under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), "a municipality may be liable under 42 U.S.C. § 1983 for a single decision by its 'policymaking officials,' even if the conduct generated by the decision occurs only once, and affects only a single plaintiff."  (Doc. 14 at 6.)

Having reviewed the complaint, the court will dismiss the municipal liability claim because the complaint does not "identify a custom or policy" or "specify what exactly the custom or policy was."  *McTernan*, 564 F.3d at 658.  Other than the conclusory statement that "Defendants developed and maintained a number of deficient policies and/or customs which caused the deprivation of Plaintiff's constitutional rights," the complaint contains no allegations whatsoever concerning any borough custom or policy.

DiMarco argues that a single action is sufficient to establish municipal liability under *Pembaur*, but his reliance on *Pembaur* is misplaced.  Although it is

14

true under *Pembaur* that a single action may establish the existence of municipal policy in appropriate circumstances, 475 U.S. at 480, DiMarco's argument is foreclosed by the Supreme Court's later decision in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

In *Praprotnik*, an architect who worked for the city of St. Louis was suspended for fifteen days for violating a city policy on accepting outside clients. *Id.* at 114–15.  The architect appealed the suspension to the city's Civil Service Commission, which reversed the suspension.  *Id.* at 115.  The architect's immediate supervisors, allegedly angered by the suspension being overturned, began retaliating against the architect, which culminated in his termination some years later.  *Id.* at 115–16.  The architect filed a retaliation suit against the individual supervisors and against the city for municipal liability.  *Id.* at 116.

On appeal, the Supreme Court held that the city could not be held liable under a municipal liability theory because the retaliatory actions by the individual supervisors could not be considered municipal actions.  *Id.* at 128–29 (plurality opinion); *id.* at 137–42 (Brennan, J., concurring).[2]  The Court offered two theories for this conclusion.  Justice O'Connor, writing for the plurality of the Court,

---

[2] The Court's judgment in *Praprotnik* was announced by a plurality of the Court, but seven of the eight justices who considered the case agreed that the city could not be held liable.  *Id.* at 128–29 (plurality opinion); *id.* at 137–42 (Brennan, J., concurring).

reasoned that municipal liability was inappropriate because "The city cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy. [And] Respondent does not contend that anyone in city government ever promulgated, or even articulated, such a policy." *Id.* at 128 (plurality opinion). Justice Brennan, concurring in the judgment and writing on behalf of himself and Justices Marshall and Blackmun, reasoned that municipal liability was inappropriate where the retaliatory action was not based on the exercise of policymaking power but rather was based on "abuse of the discretionary authority the city had entrusted" to the individual supervisors. *Id.* at 137 (Brennan, J., concurring).

The complaint in this case suffers from the same defects as the complaint in *Praprotnik*. There is no allegation of any borough custom or policy that led to DiMarco's harm, nor are there any allegations in the complaint from which it could be inferred that the allegedly retaliatory actions against DiMarco constituted an exercise of policymaking authority. Rather, it appears from the allegations in the complaint that DiMarco's three suspensions were simply an exercise of the "discretionary authority" that the city had entrusted to Defendant Dempsey. *Id.* at 137 (Brennan, J., concurring). Accordingly, the court concludes that the complaint fails to state a municipal liability claim upon which relief may be granted.

16

### C. Counts II and III of the Complaint Are Dismissed as Duplicative

The court will next address Defendants' argument that Count II is duplicative with respect to Defendants Dempsey and Tomko and that Count III is duplicative of Counts I and II.  (*See* Doc. 10 at 15–16.)  DiMarco acknowledges that Count II is redundant with respect to Defendants Dempsey and Tomko, but asserts that that redundancy "is merely semantic, and does not require that the count be stricken."  (Doc. 14 at 5.)  DiMarco does not address the argument that Count III is duplicative.  (*See id.*)  Accordingly, because DiMarco concedes that Count II is duplicative to the extent that it is raised against Dempsey and Tomko and that count III is duplicative of Counts I and II, the court will dismiss those counts.

### D. The Complaint Is Dismissed to the Extent That it Raises a Supervisory Liability Claim

Defendants' fifth argument for dismissal is that the complaint should be dismissed to the extent that it raises a supervisory liability claim against Defendants Tomko and Dempsey.  (Doc. 10 at 18.)  DiMarco does not address this argument.  (*See* Doc. 14.)  Accordingly, because DiMarco concedes the argument, the court will dismiss the complaint to the extent that it raises a supervisory liability claim against Tomko and Dempsey.

17

### E.  The Claim for Injunctive Relief Is Dismissed

In their sixth argument for dismissal, Defendants argue that the complaint should be dismissed to the extent that it seeks injunctive relief because DiMarco does not have a likelihood of success on the merits and because DiMarco has not alleged "that he is at risk of suffering imminent or ongoing irreparable injury." (Doc. 10 at 19.)  DiMarco argues that his request for injunctive relief should not be dismissed because "an injunction against further retaliation would be a logical and appropriate" remedy if DiMarco proved that he had been subjected to unconstitutional retaliation.  (Doc. 14 at 6.)

A plaintiff cannot obtain injunctive relief if he has not alleged that he will suffer future harm.  The requirement that a plaintiff "show a cognizable risk of future harm" is "the most basic rule of preventive injunctive relief."  *SEC v. Gentile*, 939 F.3d 549, 556 (3d Cir. 2019) (citing *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952)).  Past conduct "is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'"  *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 405 (M.D. Pa. 2019) (quoting *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159–60 (3d Cir. 2006)).

In this case, DiMarco does not allege any cognizable risk of future harm arising from the Defendants' conduct.  His request for injunctive relief is accordingly dismissed.

### F.  DiMarco's Request for Punitive Damages Is Dismissed in Part

Finally, Defendants argue that the complaint should be dismissed to the extent that it seeks punitive damages against the borough and against the individual defendants in their official capacities because such damages are unavailable under 42 U.S.C. § 1983.  (Doc. 10 at 20.)  DiMarco concedes this argument and clarifies "that his claim for punitive damages is asserted against the individual defendants only."  (Doc. 14 at 3 n.1)  The court will accordingly dismiss the complaint to the extent that it seeks punitive damages against the borough or against the individual defendants in their official capacities.

### G. DiMarco Is Granted Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Here, with the exception of DiMarco's claim for punitive damages against the borough and the individual defendants in their official capacities, the court finds that amendment of DiMarco's claims would be neither inequitable nor futile.  The court will accordingly grant DiMarco leave to file an amended complaint.

19

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 6, 2021